## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

[1] A.V.R, *a permanently disabled child with spina bifida and hydrocephalus.*

[2] Widallys Rivera Quiñones, *solely on behalf of her minor child, A.V.R.*

    Plaintiff,

v.

[1] Libreria Regional: La Casa del Maestro y el Estudiante, Inc.

[2] City of Bayamon

[3] Commonwealth of Puerto Rico

[4] Beauty Solutions Beauty Supplies

[5] Chegüis Pub

[6] Libreria El Regional

[7] Instituto de Terapia Integral

[8] H & R Block

[9] Expreso Cash Service, Inc.

[10] Tu Gas

[11] Aurofa Tire Center

[12] Laboratorio Lomas Verdes

    Defendants.

CIVIL ACTION

3:16-cv-02625-PAD

## AMENDED COMPLAINT
### (AS A MATTER OF COURSE PURSUANT TO FED. R. CIV. P. 15)

1.    This is a civil rights action by plaintiff A.V.R., a minor with disabilities, and

("Plaintiff") for discrimination at the buildings, structures, facilities, complex,

properties, lands, developments, and/or surrounding businesses complex, known as:

      Public Sidewalk
      Laurel Avenue (North Sidewalk)
      From Laurel Ave Esq.  Bellisima (18.376608, -66.146890) to
      Laurel Ave. Esq. Nogal (18.374999, -66.149061)
      Bayamon, Puerto Rico
      See image below



      Beauty Solutions Beauty Supplies
      Laurel Avenue
      Bayamon, Puerto Rico

      Chegüis Pub
      Laurel Avenue
      Bayamon, Puerto Rico

      Libreria El Regional
      Laurel Avenue
      Bayamon, Puerto Rico
      (excluding the operator of the Facility,
      Libreria Regional: La Casa del Maestro y el Estudiante, Inc.)

      Instituto de Terapia Integral
      Laurel Avenue
      Bayamon, Puerto Rico

      H & R Block
      Laurel Avenue
      Bayamon, Puerto Rico

      Expreso Cash Service Inc.
      Laurel Avenue
      Bayamon, Puerto Rico
      (Hereinafter, Expreso Cash)

Tu Gas
Laurel Avenue
Bayamon, Puerto Rico

Aurofa Tire Center
Laurel Avenue
Bayamon, Puerto Rico

Laboratorio Lomas Verdes
Laurel Avenue
Bayamon, Puerto Rico

(Hereafter collectively referred to, "the sidewalk and parking areas" or "the Facility").

2.    Plaintiff seeks injunctive and declaratory relief, attorney fees and costs, against each Co-Defendant (hereinafter collectively referred to as "Defendant" or "Defendants"), pursuant to the Americans with Disabilities Act of 1990 (42 U. S. C. §12131 et seq. and 42 U.S.C. §§ 12101 et seq.) ("ADA").

## JURISDICTION

3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.    Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## VENUE

5.    All actions complained of herein take place within the jurisdiction of the United States District Court for the District of Puerto Rico, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

6.    Defendants own, operate, and/or lease the subject sidewalk and parking space, and consist of a person (or persons), firm, and/or corporation.

7.    Plaintiff requires the use of a wheelchair when traveling about in public. Consequently, Plaintiff is "physically disabled," as defined by all applicable

United States laws, and a member of the public whose rights are protected by these laws.

<h3 align="center">FACTS</h3>

8.  The Facility is a public side walk and parking spaces used in fact as a parking space by many public accommodations owned and/or operated by the defendants, facilities that are open to the public, which are intended for nonresidential use and whose operation affects commerce. Plaintiff lives in Toa Alta, Puerto Rico, and A.V.R.'s school (Mariano F. Balseiro) is within walking distance of the Facility (see image below). Prior to instituting this action, Plaintiff used the public sidewalk and visited or attempted to use the public side walk and parking spaces therein more than once.



9.  Plaintiff's mother drives A.V.R. to her school from Monday through Friday. Because this is her daily route daily, she is well aware of the barriers (both physical and intangible) that interfere with, if not outright denies, A.V.R.'s ability

to use and enjoy the sidewalk or the goods, services, privileges and accommodations offered at the various facilities that share a common sidewalk and A.V.R.'s inability to properly use the public sidewalk.

10.  While able-bodied individuals can have (i) access to the public accommodations using the public sidewalk and (ii) use the sidewalk, A.V.R., in contrast, cannot do not so because of the following barriers established and maintained by Co-Defendant City of Bayamon and Co-Defendant Commonwealth of Puerto Rico:

    a)  The sidewalk does not comply with the required width.  Sidewalk width requirements exist to make sure sidewalks are adequate for use by wheelchair-bound individuals. The minimum width for an ADA-compliant sidewalk is 36 inches (3 feet), though sidewalks can be constructed wider than this. If sidewalks are less than 60 inches (5 feet) across, passing spaces must be constructed at set intervals. These passing spaces must measure at least 60 inches on all sides, and must be located at least every 200 feet.

    b)  The sidewalk does not comply with the required surface texture.  Surface textures are important to ensure disabled individuals with mobility devices can safety traverse the sidewalk. The texture of a sidewalk must be firm, stable and slip-resistant. Care should be taken to ensure any concrete finishing meets these requirements. Additionally, any grates inset into the sidewalk must comply; to ensure that mobility devices do not get stuck, any openings in the grate can be no larger than ½ inch across.

    c)  The sidewalk does not meet slope requirements. A sidewalk must have a slope of less than 1:20; otherwise it will be considered a ramp, and will be

subject to a different set of ADA standards. Further, any changes to elevation in the sidewalk must be considered. An increase in elevation of more than ½ inch will require the construction of a ramp, elevator or other compliant facility.

d) The sidewalk does not comply with the curb ramp requirements. Curb ramps are required wherever a sidewalk crosses a curb. This is particularly important at street intersections, where individuals will interact with traffic, such as Nogal Avenue. These ramps must have a slope of less than 1:12, must be at least 36 inches wide and must contain a detectable warning device with a raised dome surface and contrasting color. Ramps must not project into the street, and where there is a marked crosswalk, the ramp must be contained entirely in the width of the crosswalk.

e) The sidewalk does not comply because of obstructions. While sidewalks may be located near obstructions, such as telephone or electric poles, if such obstructions exist, the sidewalk must be constructed to allow the minimum width requirement of 36 inches between the edge of an obstruction and the edge of the sidewalk. In some cases, if a sidewalk cannot be constructed to comply with this guideline, the obstruction may need to be removed or relocated. The followings obstructions are found were identified at the subject sidewalk:

　　i. Motor vehicles. Co-Defendant City of Bayamon and/or Co-Defendant Commonwealth of Puerto Rico granted express or implied permission to the following business to obstruct the public sidewalk by using the subject sidewalk as a parking space: Beauty

Solutions Beauty Supplies, Chegüis Pub, Libreria El Regional, Instituto de Terapia Integral, H & R Block, Expreso Cash, Tu Gas, Aurofa Tire Center, and Laboratorio Lomas Verdes, among others.

    ii.   Electric/telephone/utility poles.

    iii.   Walls.

    iv.   Infrastructure for advertisement, both movable property and fixed.

11.   Co-Defendant [1] Beauty Solutions Beauty Supplies, Co-Defendant [2] Chegüis Pub, Co-Defendant [3] Libreria El Regional (owner of the building only, excluding the operator of the Facility, Libreria Regional: La Casa del Maestro y el Estudiante, Inc.), Co-Defendant [4] Instituto de Terapia Integral, Co-Defendant [5] H & R Block, Co-Defendant [6] Expreso Cash, Co-Defendant [7] Tu Gas, Co-Defendant [8] Aurofa Tire Center, and Co-Defendant [9] Laboratorio Lomas Verdes, interference with A.V.R.'s right to use the sidewalk, as they obstruct the public sidewalk for financial gain with the express or implied consent of City of Bayamon and Commonwealth of Puerto Rico. What is more, the defendant do not provide ADA compliant accessible parking spaces. However, able-bodied individuals are provided parking spaces (that obstruct the sidewalk), as the images below corroborate.













12. Prior to instituting this action, A.V.R.'s mother parked in a space designated as accessible and sidewalk located in front of a business known as Libreria El Regional. The parking space or sidewalk was sloped, making it unnecessarily difficult for A.V.R. to exit the vehicle. As a result, A.V.R. had to stay in the vehicle because of safety concerns and to avoid a potential psychical injury. A.V.R.'s mother observed more closely and in more detail that the surface of the sidewalk (and parking spaces) were uneven and cracked near Libreria El Regional.

13. The barriers identified in paragraph 12 herein are only those that Plaintiff personally encountered near Libreria El Regional. However, A.V.R.'s teacher's at Mariano F. Balseiro school made an extracurricular activity that involved going around the community using the sidewalk. Because of the discriminatory barriers, A.V.R. was unable to have "full and equal" access to the public sidewalk, and A.V.R.'s teacher, A.V.R.'s friends at schoo, A.V.R.'s mother can

corroborate this unfortunate event in which A.V.R. was excluded because of the barriers at the sidewalk (and surrounding areas).  It is Plaintiff's intention to eliminate all barriers which exist at the subject sidewalk, even though she does not have the technical knowledge to identify all barriers to access at this stage of the litigation. Leave to amend will be sought in due course and Plaintiff will point out all discriminatory barriers to access at the sidewalk.

14. The sidewalk is illegally used by Co-Defendant Beauty Solutions Beauty Supplies, Co-Defendant Chegüis Pub, Co-Defendant Libreria El Regional, Co-Defendant Instituto de Terapia Integral, Co-Defendant H & R Block, Co-Defendant Expreso Cash, Co-Defendant Tu Gas, Co-Defendant Aurofa Tire Center, and Co-Defendant Laboratorio Lomas Verdes because of their own illegal discriminatory actions and also as a result of the unlawful policies and practices of Co-Defendant City of Bayamon and Co-Defendant Commonwealth of Puerto Rico.

15. Plaintiff was, and continues to be, deterred from visiting the sidewalk and parking areas, and adjacent business, because Plaintiff knows that the sidewalk and parking areas were and are unavailable to Plaintiff due to A.V.R.'s physical disability. At the same time, Plaintiff was, and continues to be, deterred from visiting the business of each Co-Defendant because of the lack of accessible parking spaces at each business, despite that parking space is, in fact, provided to the able-bodied community.

16. Defendants knew, or should have known, that these elements and areas of the sidewalk and parking areas were inaccessible, violate federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the

financial resources to remove these barriers from the sidewalk and parking areas, (without much difficulty or expense), and make the sidewalk and parking areas accessible to the physically disabled. To date, however, Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

17.     At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the sidewalk and parking areas to remove impediments to wheelchair access and to comply with the 2010 Standards for Accessible Design. Defendants have not removed such impediments and have not modified the sidewalk and parking areas to conform to accessibility standards. Defendants have intentionally maintained the sidewalk, parking areas, and businesses in its current condition and have intentionally refrained from altering the sidewalk, parking areas, and adjacent businesses so that it complies with the accessibility standards.

18.     Plaintiff further alleges that the (continued) presence of barriers at the sidewalk, parking areas, and adjacent businesses is so obvious as to establish Defendants discriminatory intent. On information and belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the sidewalk, parking areas, and adjacent businesses; conscientious decision to maintain the architectural layout (as it currently exists) at the sidewalk, parking areas, and adjacent business; decision not to remove barriers from the sidewalk, parking areas, and adjacent businesses; and allowance that Defendants' property continues to exist in its non-compliance state. Plaintiff further alleges, on

information and belief, that the sidewalk, parking areas, or adjacent businesses are not in the midst of a remodel, and that the barriers present at the sidewalk, parking areas, and adjacent business is not isolated (or temporary) interruptions in access due to maintenance or repairs.

19.     As one of the compromises involved in Congress passing and then President George H.W. Bush signing the ADA into law in 1990, enforcement of Title III, the public accommodation section, is almost entirely by private lawsuits. Although the U.S. Department of Justice has jurisdiction to enforce the ADA, there are no administrative agencies or federal "building inspectors," and no costly bureaucracy to enforce the law, an economic factor that was appealing to both to "conservatives" (and "liberals," to some extent) in 1990. Passage of the ADA in 1990 was a compromise in this respect: attorney fees were made awardable per Section 505 to a prevailing disabled plaintiff, to encourage private attorneys to handle enforcement actions, rather than putting in place a potentially expensive bureaucracy to enforce this law.   Encouraging competent attorneys to handle ADA cases is necessary for effective enforcement of the law, as the U.S. Department of Justice has generally not involved in individual plaintiff cases, or enforcement of the "readily achievable" standard, at least not in Puerto Rico. The importance of underlining encouraging ADA cases, and recognition that ADA carry out an important role as private attorney general, was underscored by Northern District Chief Judge Thelton Henderson in underlining Walker v. Carnival Cruise Lines, 107 F. Supp. 2d 1135, 1140 (N.D. Cal. 2000):

*There can be no question that the Americans With Disabilities Act, passed in 1990, established as law the nation's interest in eradicating the bigotry and barriers faced by individuals with disabilities. 42 U.S.C. § 12102 et. seq. (hereafter "ADA"). In fact, the ADA states its first goal as being "to provide a clear and comprehensive national*

*mandate for the elimination of discrimination against individuals with disabilities." See 42 U.S.C. § 12101(b)(1) (1999). The ADA creates the possibility that successful plaintiffs may establish permanent changes in the design and physical configuration of structures to better accommodate the disabled. 42 U.S.C. § 12101(a)(5). The benefits of such changes clearly redound not only to the plaintiffs themselves, but to similarly situated disabled persons, and the entire society at large. <u>As a result, plaintiffs or plaintiff classes who bring suit pursuant to the ADA do so in the role of "private attorneys general" who seek to vindicate "a policy `of the highest priority.'"</u> See Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 417, 98 S.Ct. 694, 698, 54 L.Ed.2d 648. See also Bruce v. City Of Gainesville, Ga., 177 F.3d 949, 951 (11th Cir.1999) (discussing ADA plaintiffs as private attorneys general); Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 11 (1st Cir.1999);*

*For example, <u>successful ADA plaintiffs confer a tremendous benefit upon our society at large</u>, in addition to the attainment of redress for their personal individual injuries, successful ADA plaintiffs, like plaintiffs under Title VII, are entitled to 42 U.S.C. section 1988's fee shifting provision. See 42 U.S.C. § 1988. As the Eleventh Circuit recently has explained,*

> *"[i]n Title VII cases as well as cases under the ADA, <u>the enforcement of civil rights statutes by plaintiffs as private attorneys general is an important part of the underlying policy behind the law. Such a policy <u>ensures an incentive</u> for `impecunious' plaintiffs who can ill afford to litigate their claims against defendants with more resources...."*

The United States Department of Justice has also supported the necessity of private suits under the ADA:

Private plaintiffs play an important role in enforcing the ADA, particularly in the area of public accommodations, which includes a large number of entities. See 42 U.S.C. 12188(a)(1). The United States could not investigate every place of public accommodation in the country to determine if it is in compliance with the ADA. Effective enforcement of Title III, therefore, depends upon a combination of suits by the United States and litigation by individuals with disabilities who are aware of and encounter violations in their local communities. The United States therefore has an interest in ensuring that the standing of private plaintiffs to sue under Title III is not unduly restricted. {From U.S. Department of Justice amicus

brief in <u>Chapman v. Pier 1 Imports (US), Inc.,</u> 631 F.3d 939 (9th Cir. 2011)}[1] See also, <u>Suarez-Torres et al v. Restaurantes Fridas, Inc.,</u> Civil No. 16-1912 (FAB) (CVR) (Docket No. 12) ("ADA complaints by private persons are the primary method of obtaining compliance with the law); <u>Fiedler v. Ocean Properties, Ltd.,</u> 683 F. Supp. 2d 57, 71-72 (D. Me. 2010) (same).

## CAUSE OF ACTION

### Americans with Disabilities Act of 1990

### <u>Denial of "Full and Equal" Enjoyment and Use</u>

20.   Plaintiff incorporates the allegations contained in paragraphs 1 through 18.

21.   Title II forbids any "public entity" from discriminating based on disability; and Section 504 applies the same prohibition to any federally funded "program or activity." 42 U. S. C. §§12131–12132; 29 U. S. C. §794(a). A regulation implementing Title II requires a public entity to make "reasonable modifications" to its "policies, practices, or procedures" when necessary to avoid such discrimination. 28 CFR §35.130(b)(7) (2016); see, e.g., <u>Alboniga v. School Bd. of Broward Cty.,</u> 87 F. Supp. 3d 1319, 1345 (SD Fla. 2015) (requiring an accommodation to permit use of a service animal under Title II). By reason of her disability, A.V.R. has been and continues to be denied "participation in ... the benefits of the services, programs, or activities of" the City of Bayamon. 42 U.S.C. § 12132. She is unable to use Bayamon's public streets See, e.g., <u>Kinney v. Yerusalim,</u> 9 F.3d 1067 (3d Cir.1993) (streets and sidewalks were city services); <u>Tyler v. City of Manhattan, Kan.</u>, 857 F.Supp. 800 (D.Kan. 1994) (streets and

---

[1] The U.S. Department of Justice amicus brief in <u>Chapman</u> is available at:
https://www.justice.gov/sites/default/files/crt/legacy/2010/12/14/chapman.pdf

sidewalks were services of city); Concerned Parents, 846 F.Supp. 986 (recreational programs were "service, program, or activity" of city).

22.   Co-Defendant City of Bayamon and Commonwealth failed to install proper curb cuts and ramps in accordance with 28 C.F.R. § 35.151.  As to this allegation, Plaintiff note that  Title II, 42 U.S.C. § 12132, is enforceable through a private cause of action. Barnes v. Gorman, 536 U.S. 181, 184-85, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002); Parker v. Universidad de Puerto Rico, 225 F.3d 1, 8 (1st Cir.2000) ("Although Title II does not expressly authorize a private cause of action, it adopts the remedial scheme of Title VI of the Civil Rights Act of 1964, under which there is an implied private cause of action."). This private right of action exists under § 203 of Title II, 42 U.S.C. § 12133, and derives from the fact that § 203 ultimately adopts the remedies, procedures, and rights set forth in Title VI, which, as noted, is itself enforceable through a private cause of action. Barnes, 536 U.S. at 185, 122 S.Ct. 2097. Plaintiffs' claims in this regard are based upon defendants' failure to meet the requirements of 28 C.F.R. § 35.151, which was promulgated pursuant to 42 U.S.C. § 12134 to effectuate § 202. Section 202 of Title II does not merely prohibit intentional discrimination. It also imposes on public entities the requirement that they provide qualified disabled individuals with meaningful access to public services, which in certain instances necessitates that public entities take affirmative steps to remove architectural barriers to such access in the process of altering existing facilities. 28 C.F.R. § 35.151 is a regulation adopted by the Attorney General at Title II's express direction that effectuates this aim. As such, the regulation is enforceable through Title II's

private cause of action available under § 203. Therefore, A.V.R. do have a private cause of action against defendants for failing to comply with 28 C.F.R. § 35.151

23. Co-Defendant City of Bayamon and Commonwealth failed to adopt a transition plan pursuant to 28 C.F.R. § 35.150(d).

24. Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

25. Co-Defendant Beauty Solutions Beauty Supplies, Co-Defendant Chegüis Pub, Co-Defendant Libreria El Regional, Co-Defendant Instituto de Terapia Integral, Co-Defendant H & R Block, Co-Defendant Expreso Cash, Co-Defendant Tu Gas, Co-Defendant Aurofa Tire Center, and Co-Defendant Laboratorio Lomas Verdes, do not provide ADA compliant accessible parking spaces and thus, these Co-Defendants —whose purported parking spaces are a *common*, shared sidewalk— discriminated against A.V.R. by denying her "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of available at their businesses during her visit to the area and because of each incident of deterrence.

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

26. The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable.

27.   When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable.

28.   Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the sidewalk, parking space, and adjacent business without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

29.   In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

30.   Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under the ADA.

31.   The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so.

32.   Here, Defendants violated the ADA by designing and constructing (or both) the sidewalk, parking spaces, and adjacent business in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.

<u>Failure to Make an Altered Facility Accessible</u>

33.   Plaintiff alleges on information and belief that the sidewalk and parking spaces were modified after January 26, 1992, independently triggering access requirements under the ADA.

34.   The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible.

35.   Here, Defendants altered the sidewalk and parking spaces in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

36.   The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such

modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

37.   Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the sidewalk and parking areas, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

38.   Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for:

A.  A declaratory judgment that Defendant is in violation of the specific requirements of Title II and Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that the subject sidewalk and parking space area, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs or limited mobility;

B.  A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504 (a) which directs Defendants to take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the sidewalk and the parking spaces are fully accessible to, and independently usable by, individuals who use wheelchairs or individuals with limited mobility, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant's facilities come into compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

C.  Payment of costs of suit;

D.  Payment of reasonable attorneys' fees;

E.  The provision of whatever other relief the Court deems just, equitable and appropriate.

**RESPECTFULLY SUBMITTED**,

**/S/JOSE CARLOS VELEZ-COLÓN, ESQ.**
**USDC-PR NO.: 231014**
jcvelezcolon@gmail.com

PO BOX 2013

20

BAYAMON PR 00960

TEL: (787) 599-9003

*Attorney for Plaintiffs*